Well, welcome to May 1st. Sun's out for the next weekend's Jazz Fest, I suppose. I'm sure none of you came early for that, but in any event, welcome to the West Courtroom. I'm supremely honored to be sitting with Judge Higginbotham and Judge Costa, and we have three days worth of oral arguments and other cases. Most of you, I know the ones at the podium are veterans, but the main admonition is just to speak up in the microphone. You would be amazed at how often we can't really hear it, particularly on the tapes, so when you're in the mic, if you just keep your voice up and in there, we can hear it. Occasionally, people in the audience want to hear your answers as well, so keep your voices up, the red light, you understand that system. We've read the briefs, and to a good degree, we've been in the record on these cases also, so you'll help us out a lot by responding to the questions that the panel has. That says we'll call up the first case, United States v. Flores, et al. Mr. Socolow? May it please the Court, Your Honors, the District Court committed reversible plain error by concluding that it was required to run Mr. Flores's illegal reentry sentence consecutive to his new revocation sentence for revocation of supervised release. First, the District Court committed an error that is plain. Under this Court's recent unpublished opinions in Diaz, Garcia-Vasquez, and Villareal-Garcia, this Court held that the error is plain. Let me ask you a threshold question that comes up a lot of times. First, the error is so palpably egregious on appeal, how to wit does it escape the attention of the lawyer down below? Is it their teaching, thou shalt not object, as a strategy? I mean, it's a burning issue, and I'm not being facetious here on appeal, but it's right there. They're right there in the proceedings. The record doesn't show that the judge was rushing anybody to do it, and we say part of the essence of the judgment is to bring it to the judge's attention, so that if there is an availability to correct it, it can be done. There are some issues maybe that get outside of it, but it sure looks like in sentencing, that's the prime time to bring something to the attention of the trial judge, sentencing judge, to either correct it or not and make an issue. That doesn't happen, but yet, straight out the gate, as big as Dallas, as big as the world, in terms of being, quote, plain and egregious. Not to take all your time with that, but was there a strategic or otherwise thought process in the non-object, or just something that was missed? No, your honor. I don't believe so. I can't offer the court a justification for it, because I agree that it should have been raised, but I can offer the court my armchair sociological explanation for it, if you'd like to hear that. Well, you only got 12 minutes, so I don't want you to take that as extra time, but just know that I asked the question, okay? I'm sure my colleagues are not a little curious. Judge Costa came to us from the trial bench, and he did it, and we've all been there. Anyway, just know that that is really a looming issue out there. It's a brooding omnipresence. Yes, I'd like to just take a minute or two to offer my armchair explanation for whatever it's worth. As the court can take judicial notice of in the Diaz record, the Diaz hearing ended at 4 13 p.m. This hearing began at 4 13 p.m. As the Diaz opinion makes clear, the judge in the prior hearing said, isn't there a Fifth Circuit case that shows I have to run this consecutive, and the prosecutor said yes. Now, there's an overlay also. We have a visiting judge. They cited the Brown case, and of course the problem is that the guidelines changed. Right. I'm not justifying it, Your Honor. I'm just trying to offer an explanation for what happened, and I think perhaps rather than it being strategic, I think that our Laredo lawyers perhaps gave way too much deference to an unfamiliar district judge who said the law is this rather than researching the law and standing up and saying, no, that has not been the law since 2003. So that's my armchair explanation, and that's what I believe what happened. I think that makes a lot of sense, but, you know, the reality is that you've got two former district judges here, and one of them is a trial judge as well, and I expected to assist the United States Attorneys when I was a district judge some time back to correct me as a judge, and they would, and so, you know, part of the Chief's message back home is to speak up. Yes, Your Honor, and sometimes, and I think what happened in this case, and I don't think it was a good strategic choice, but I think it appears the lawyer heard the judge's position and thus fashioned a position to try to get the client the sentence the lawyer wanted while accommodating the judge's position. I think that's why the lawyer said something like, all right, well, we'll take a consecutive sentence of eight months and whatever, 16 months for a 24-month sentence within the 1326 guideline. I'm sorry, Your Honor. You picked a label, and I want the years. In other words, if he could get to where he wanted to go, he didn't care what label you put on it, and I understand that. And I believe that was what was happening, but nevertheless, the preferable position, as we all agree, is, Your Honor, I object, but in the alternative, and which the Diaz opinion, I think, shows happened. The Diaz lawyer asked for an alternative concurrent sentence, and that's when the judge said, no, it has to be I object. It doesn't have to be consecutive, but in the alternative, give me this sentence. And as I said, I would hope that this will not happen again, and from my point of view, as someone who has tried a lot of cases in the past, I don't think there's an advantage to not asking for the lowest sentence under the law as correctly construed and just letting someone get a consecutive sentence. So that's my answer on that. Let me ask you on the fourth prong, and our unpublished cases, we have some going both ways. So just as a matter of first impression, the typical plain error case comes to us, a guideline enhancement, crime of violence or something like that, got applied in the district court. It shouldn't have. So the defendant was sentenced under a guideline that was not, in fact, the correct guideline. It wasn't what the sentencing commission recommended. Here, he was sentenced pursuant to what the guidelines recommend. The mistake was, the judge thought it was basically required to run these consecutive. But under the guidelines, it was still the recommendation that they be consecutive. So the result here was actually, unlike most plain error cases, was what the guidelines recommend. So tell me why doing what the guidelines say you should do amounts to a sentence that undermines the fairness, integrity, et cetera. Yes, Your Honor. I think we have to combine the third prong analysis and the fourth prong analysis in the recent three cases. Under the third prong analysis of the recent three unpublished cases, the court compares the consecutive guideline range to what the low end on the concurrent would have been and the high end on the consecutive. And that's how the court found that there was third prong plain error, because the court started from a higher range, a higher So I think that answers the court's question about, you know, how does it affect the guidelines in this case? Because the court should have started from... I've seen those opinions. I'm not sure they're right, because the guideline is just a recommendation. Everything under Booker is a recommendation now. And it is the case that the recommendation is to run these consecutive. So what the guidelines recommended here was 21 to 27 months on the illegal reentry, plus 8 to 14 on the revocation. That is, you'll concede today that if this goes back, if we find error, send it back, that's still going to be the guidelines. That's going to be what's recommended to the district court, right? Your Honor, that's recommended. But as in other cases, like in departure cases, the court did not understand its discretion to do otherwise. And that's part of the fourth prong analysis, I would say. And second of all, the court also looks at the obviousness of the error under the fourth prong. And this has been obvious since 2003. And third, the court looks at the magnitude of the error compared to the sentence imposed. And here, if you use that concurrent consecutive guideline range, it's about a 25 percent increase in the sentence. And also under the fourth prong, the court here expressed its opinion that defense counsel had made a good argument for showing compassion for this sentence. And the court said, nevertheless, I have to do my duty. I have to run the court consecutive. But if he really felt all this compassion, why, he could have given him a day on the revocation, even if he thought he had to run it consecutive. There's full discretion under Booker. Well, that's true of every guideline case, though, Your Honor. We never meet. That's the very point. What our difficulty here is the contemporaneous objection rule has a very, very powerful policy behind it. And it's to ensure that these errors are corrected where they can be most effectively corrected, which is at the trial court level, which is the benefit of not just the government, but it's the benefit of the defendant as well. And what you're arguing, it seems to me, when you soften the threshold point for plain error review, that is for relief under plain error, you are moving very closely to a retreat, entire retreat from contemporaneous objection rule. In other words, it cannot be that every error in sentencing is reviewable de novo. We're going to have to have about 30 more judges to get on here just to pass on those things. That's true. The system won't work that way, and it doesn't work that way. So how do we remember that the contemporaneous objection rule is in the background of this? And that's the difficulty I'm having with the relief that you seek here. Well, Your Honor, I think to answer the Court's question, I think the burden of proof on harmless error versus plain error addresses that. That's why we have the burden of proof on the third and fourth prongs for plain error, and the government has the burden of proof to show error on harmless error. But that doesn't stop the appeal. I mean, there's still Rule 52B. There's still an appeal so that we can have an opportunity to meet our burden. It doesn't matter. And here, I think we do meet our burden for everything I've said, and in addition, because the district judge expressed compassion for this defendant and did not know the judge could exercise his authority. I think the proper result is, as the D.C. Circuit ruled in the head case, is to remand and give the district court the opportunity to exercise its full discretion under the law to impose the sentence the district court chooses, not to pretermit that determination by saying, well, you know, it's up here on plain error, and this person has a certain record, and so we're just going to affirm. I agree. It still doesn't address the—I mean, your response is responsive, but it still doesn't address the question the asker in the room is on the someone feel, you know, this sort of breaches confidence in the system, so to speak. In other words, I mean, that's the fourth part. I mean, yeah, it's error, da-da-da-da-da. You say district court, you know, expressed compassion. I say, hey, if you're feeling all that in the courtroom, all the more reason, you know, to raise this issue if the compassion is sort of oozing out. But to the point of standing back from it, you know, say this is what he got, it was a recommendation, eh, maybe there's an error, but is it so egregious that, you know, prong four is going to warrant being triggered that it's abhorrent what happened here, you know, as opposed to defendant's entitled to a fair trial, defendant's not entitled to a perfect trial. We need to be a little bit of a push on the relief end, and that's what Judge Higginbotham was coming to, actually, is on the relief end to say you don't have to object down below to this powerful error. You get a bite again when you come to the court of appeal that if enough reason is given to go back down and try to then persuade the judge to exercise the compassion to do something that he, in this case, didn't think he could do, but he could. I say we've denied plain error relief to me in cases that are more compelling in terms of the relief out there. Well, I guess I would respond, part of the fourth prong is the integrity of the judicial proceedings. And so, if the court, the integrity, which to me is maintained when people can have an expectation of two people in the court, are going to bring it to the court's attention. And I have this same issue with the government. When I was in AUSA and I step in and say, my name's Carl Stewart, and I'm here to represent the United States government, that used to mean something. And so, they don't get a lay down either to not bring the matter to the attention of the trial judges. And we're not picking at, you know, this is not a frivolous appeal, so don't hear me as picking at that the appeal doesn't have merit, et cetera. We're just, it's a reason why we grant oral argument in it, is one reason. Because this we could decide on the papers. But one of the reasons that we grant oral argument is to have this conversation, that there's a lot going on besides just picking a number in the guidelines and saying, here, here, here, what's coming up to us. Because we get this sea of cases, you know, where there's no objection and it's well as pronged, three pronged, four, and how do we maintain it? Judge Costa said, we got unpublished opinions that kind of, you can read this way, that way. So, I guess I'd say, in a sentence, tell me the most compelling reason for the panel to grant relief. The fourth prong includes the integrity of the judicial proceedings. When a district judge does not understand his or her the integrity of the judicial proceedings. Thank you, Your Honor. All right. Thank you, Mr. Sokolow. As always, your advocacy and your candor is well appreciated. You've saved some time for rebuttal. Thank you, Your Honor. All right, Mr. USA, you know where I'm coming from. Straight out. I do. Chief Judge Stewart, and may it please the Court, Andrew Gould for the United States. Let me address that right off the bat. Your first question and your ending question was, how does the error occur below? I don't have the same armchair sociological skills as my friend. Let me clarify one thing. I don't think that the law requires that this shock the conscience. That has crept into the jurisprudence here in a kind of a viaduct. I don't think that, but I think Counsel Offit correctly stated the standard, which is the integrity of the proceeding. And so this notion of shock the conscience, which is a substantive due process concept, I don't think, and I really don't believe it's the law of the circuit, is an element of that. So for whatever use that may be, and you're telling me what this error is and how to characterize it, you're free to comment about that as well. Judge Higginbotham, the fourth prong, which I believe your question is going toward, is there's a lot of factors that go into play. And to my friend's credit, the obviousness of the error is one factor that comes into play, but it is just one factor. If I may return briefly, and I promise I'm going to address the fourth prong. Chief... Is there something different? Most of these plain error cases we see, the defense lawyer doesn't object to a crime of violence enhancement or some other enhancement. So there's just silence in the district court. No one thinks that there's a problem with this enhancement that got applied. Here it's a little bit different in that the government tells the judge incorrectly what the law is. Should that factor into our fourth prong? Because the government had an affirmative role in the error? In Judge Costa, in the Diaz case, the government was the first to make the error. I can't explain why that happened. It is regrettable. As much as I enjoy the opportunity to appear before you, I don't enjoy the opportunity to have to defend something like that. Someone agrees it was wrong, but the question is should that factor into the fourth prong? Does it make it a less fair proceeding? Does it question the integrity when the government lawyer, it's not just silence, but affirmatively contributes to the mistake? Again, in the Diaz case, that argument has more force. Here, the timing is different. The timing here, and this was the first to suggest consecutive sentences. After he made that suggestion, then there was a conversation between the government and the court. And the government, again, we're not backing away from this. We did continue to engage in this error, this erroneous belief. But then at ROA 139, Mr. Flores' counsel again confirms, I'm not asking for concurrent sentences. So, it's different, it's a bit different than, respectfully, than what you're describing, Judge Costa. Because here, Mr. Flores' counsel... Weren't they all on the same day? Two of them were. Diaz wasn't the same day as... Diaz was on the same... My friend is right, in terms of the timing. The Diaz case happened immediately before this one. The two other cases happened, I believe, in the earlier, in the following week. But the question still has to be, you know, the government hasn't retreated, and I hope our briefing makes that clear. We agree, this was error, this was clear. But you still have to meet the third and fourth prongs of plain error. And I want to spend some... I'm going to put it to you this way. What difference does it make that, and should it be weighed heavily about, unlike the normal situation in which we want the contemporaneous objection rule to have bite, the trial judge itself initiated this error, in a sense. And it said that Brown, I believe the Brown case is that it controls this. There was some conversation about it, but there was a district judge, as I recall, that said it was a Brown case. And of course, that was unfortunately a misstatement, because Brown would... He was correct, but Brown was talking about a different... That ignored the change in... Subsequent to Brown in the regulation. So this error, in other words, really began with the district judge and the lawyer sent to sort of ratify that. And Judge Higginbotham, again, I think that goes, these are all the factors that this court must weigh in terms of what... It's in the word integrity as the model that we're going to judge this by. Why should we not allow this to go forward, because the district judge himself was an error, an error by the courtroom, apparently, other than the defendant. I'm not sure with the defendant. I think the defendant was trying to play the language of whatever you say, but this is the sentence we want. Why should that... Does it matter, or should that cut the other way? Well, I think, Your Honor, I mean, again, I keep saying it's a factor, and I don't mean to be standard on the fourth... We say it when we don't know what to do with it. The question is, does it substantially affect the fairness, integrity, or public reputation of judicial proceedings? There are a number of factors that go into this. And what you're describing are factors that this court can consider in terms of its discretion. Let me provide the court with some other factors that I believe this court should weigh. Again, as Judge Costa said, the guidelines recommend this, 7B1.3F. That recommendation has not changed. Let me ask you, this is similar to the question I asked Mr. Socolow. I know some of our unpublished cases treat this as a problem in the guideline calculation. I really don't see it that way, because if we sent this back, as I said, the guidelines are going to be the exact same, 21 to 27 on the reentry, and then 8 to 14 on the revocation. So it's really not a problem with the guideline calculations or what the guideline recommends. It's a problem with the judge thinking he didn't have discretion on whether to run them consecutive when, in fact, he did. So it's really, to me, like a Booker problem. When Booker first comes out, all these judges had sentenced thinking the guidelines were mandatory. In fact, the Supreme Court tells everyone after close to 20 years, no, they're just recommendations. Do you know what we were doing as a court when Booker came out and you had all these judges who had sentenced people thinking the guidelines were mandatory? Were we finding fourth prong met there? No, Your Honor. And I believe it started with a case called United States v. Maris, M-A-R-I-S. I don't have the letter. Maris is our in-bank case. It's our in-bank case where we pronounce on, you know, this whole seal deal. But Maris is the in-bank case written by Judge Davis. And in that case, even with Booker error that's not preserved, it still has to run through third and fourth prong of the plain error analysis. And actually, Judge Costa, we've argued in our brief, and we stand by it today, that Mr. Flores has not shown, in fact, that this error affected his substantial rights. The question on the substantial rights inquiry is, is there a possibility that we all find that this error affects the third prong? And they rely on the Supreme Court's recent opinion. It could have been up to a 10-month differential. Correct. It could have been up to a 10-month difference in Villareal-Garcia, which a panel affirmed it was a 15-month difference. And in Weickerink, which is not, obviously, it's a much different case, but there it was, I believe, around a 180-month difference. Mere sentence increases have never been enough under the fourth prong. Again, it is a factor, but it is not dispositive. Returning to the third prong, I respectfully disagree that Melina Martinez applies to this case for that reason that you point out, Judge Costa. This was not an error in the calculation of the guidelines ranges. It's undisputed that the district court correctly calculated the guidelines range for the illegal reentry offense and for the revocation offense. The error was different. The error was in its determination that it was required to run them consecutively. So Melina Martinez doesn't address that. And so what the— Whether you have discretion to stack the sentences is not pretty basic stuff. I mean, that's—I don't know how you set up a sentence if you've got multiple counts. Do you have the power to stack them or not? I mean, stacking it or not, it's a very basic issue in criminal sentencing. I agree it's basic. It's not an esoteric sidebar. This is what it's about, in multiple counts. I agree, Your Honor. And so—but still then the question remains, and this is like in—with Booker in advisory guidelines, has he shown a reasonable probability of a lesser sentence? I agree with my friend. He writes in his reply brief that the district court's erroneous belief influenced its decision to impose consecutive sentences. That's at—the test for preserved error, for a preserved objection, and if the government can establish that it's harmless. If the error was preserved, we wouldn't be here, I don't believe, because we agree that it influenced the decision. But he must show a reasonable probability of a lesser sentence. In—the panel deciding the three other cases rely on Molina-Martinez and say, well, the court applied—effectively applied a cumulative guideline range. This particular defendant had what strikes me as a rather compelling mitigation circumstance, if you will. His re-entry, he said, was because the enemy had killed his father. Is that right? That's what he said, Your Honor. Yeah, that's what he said. That's what he said, and— Did the government disagree with that, or? Well, we don't have any information to confirm or deny what he's saying. I will say that and they attempt to say the reason for my illegal re-entry is because there are problems in my home country. The benign reason, and that's not enough, and it's never been enough. Returning very briefly to the Molina-Martinez point, if—the district court here didn't apply a cumulative guideline range. It didn't say, for example, the guideline range is 21 to 27 months on the illegal re-entry and 8 to 14 on the revocation, therefore it's 29 to 47. There's no evidence of that. It's a separate error. Well, in fact, these are entirely separate cases. It's not like three counts of mail fraud all in one proceeding. I mean, they get—they have separate case numbers, right? I mean, there's a new illegal re-entry case, there's a revocation case, there's separate judgments entered, there's separate proceedings. They could have been sentenced on different days. It's just for efficiency purposes, the court does them together. But with separate proceedings, it does—I mean, it does seem that the natural default course of things is the sentences are going to be separate and consecutive when they're entirely separate cases. I believe so, Your Honor. And if you look also to ROA 146, that's where after the district court imposes its sentence, Mr. Forrest's counsel objected to its reasonableness. And the court responded and said this sentence considers the 3553A factors and it gives him, quote, quite a bit of latitude within the guidelines. It's possible, without question, it is possible that if this case—if the district court had appreciated its discretion, maybe it would have said that a mere possibility isn't enough. And given those statements, in fact, if there's any reasonable probability the government respectfully submits, it's reasonably probable that the district court would follow the recommendation of the guidelines to run them consecutively. But even were this court to agree with those three cases that this affects the defendant's substantial rights, going to the fourth prong, again, to substantially affect the integrity, fairness, public reputation of judicial proceedings, there are a variety of factors. The guidelines recommendation has to be a factor. I do believe that Mr. Forrest's own suggestion that the district court run consecutive sentences must be a factor that the court should consider. He amassed seven criminal convictions in seven years. He has four deportations. And after each deportation, he immediately returned to the United States. In this case, he returned within two months after serving his sentence for his prior illegal reentry and being deported. And he returned. And at sentencing at ROA 137, he didn't actually tell the court, I'm not coming back. He said, I think I won't come back. That plays into it. I agree with my friend when he says he doesn't have a serious history in terms of assaults, murder, what you also see. But again, it's serious in the form of there are seven convictions in seven years. There's a felony drug conviction. And there's a DWI conviction where he blew a .14. That's unsafe behavior. So I don't think you can simply say, well, because there's no assaults, it's not serious. Again, this is one other factor. Similar to Weickerink, the district court explained its reasons for its sentence at both ROA 143. It tied it to the 3553A factors. And as I previously mentioned, at ROA 146, it explained how the sentence gave him quite a bit of latitude within the guidelines. One final factor that the court should consider is what Mr. Flores' sentence would be under the current guidelines. Now, if this case were to be remanded, he wouldn't be sentenced under it for ex post facto reasons. But the current guidelines provide a proxy as to what the Sentencing Commission currently believes is an appropriate sentence for defendants like Mr. Flores. Under the 2015 guidelines, he scored at a total offense level of 10. That was a base offense level of 8, a 4-level enhancement, minus 2 for acceptance of He would receive a base offense level of 8, a 4-level enhancement for a prior illegal reentry conviction, and another 4-level enhancement for a felony conviction after a deportation, minus 2 for acceptance of responsibility. His guideline range in that case, because his criminal history category would be the same at 5, would jump from 21 to 27 months to 33 to 41 months. Now, again, we're not suggesting that he would be subject to this range upon, if this case were to be remanded, but again, assuming he were to commit this offense today with this record, at the low end, it would be a 33-month sentence. That's higher than the 31-month sentence that he received in this case, running the two consecutively. So that's another factor that this court should consider. Well, there's a reason probably that all those, you know, the other cases in here are not precedential because, you know, there's a different ingredient in each one. From my eyes, I don't know whether it's good or ill, but for the fact that I would have said that I sat two days instead of four, I would have been the third panelist on those other cases that were decided, but they were decided the two days I didn't sit. So I'm seeing it in the first instance. All I have to say is it caused me to look at those real carefully, and the only thing I can see is that if I'm trying to square Villareal-Garcia with what we have here, and the only thing I can see is y'all keep saying, well, it's just a factor, it's just a factor, is, you know, there's multiple deportation times, etc., and in Villareal, the multiple convictions, because otherwise it's kind of an in and out on these other factors. On the other hand, the kind of error here seems to me very similar to Garcia and Diaz. I mean, the kind of error, the quality of the error, if you will, is very similar, if not identical. So it just doesn't seem that, you know, there's kind of the bright line of, okay, what is it that makes the affirmation stand out, which for me is a good segue back to my ask but unanswered question when you headed to the podium, because we got on other things, of all the more reasons for, you know, the objection up front to not be in this sort of morass of, well, what weighs more, the fact that this guy, what, he's deported three times, he returned two months after, so you sent it back. The district judge is going to be looking at that. You know, to me, it's arguing uphill in the face of that for a defendant in front of the judge. Judge Davis is in Mississippi. I'm not even sure he'd be the same judge, you know, to sentence him. I mean, there are a lot of floating issues. I'm not asking that to be answered, but just to point out the complexity of what happens all this judicial time spent in a case like this when a timely objection at the front end will put the matter there instead of us sort of dancing on the top of the pinheel of which, you know, which of these factors weighs out. So, I mean, I know your take. You're saying, well, this is more like Villareal-Garcia, therefore, affirm, blah, blah, I got you on that. So on the red light, Chief Judge time, what's your response to my first question? About the how did the error occur and why wasn't there a timely objection? I don't have a good answer. More to the point, where was the government? The government, in this case, the government failed. Candor is always appreciated. And I know my red light, if I can. I already told you, you're on my time. Thank you. Thank you. A light doesn't save you from answering my question. But I ask it in a very serious way. We all do because we get these cases. But, you know, it's just kind of not enough, particularly where it's here and the point that Judge Higginbotham raised and we all raised, you know, here was, you know, the judge is in the calculus here with the error. And all of us who've been there, you know, depend on the parties to say, Your Honor, you know, consider this, consider that. And most judges, I mean, there may be a few, want the parties to point out, you know, where there may be a concern. So it does bother me. And that's why I asked him whether it was a strategy reason to not point out, you know, the point of error. Then the judge can say, Well, I see that, da, da, da, da, but nonetheless, I'm gonna, you know, do this. So . . . We're not asking Chief Judge Stewart to be excused from this. We . . . This was our mistake, too. So I can put a line in the opinion saying the government conceded its error. It was fatally egregious in not bringing this to the district court's attention. Respectfully, I wouldn't . . . not fatally egregious. But I will say this in closing. We have addressed this internally. We don't want this to happen again. It shouldn't have happened in the first place. And we've taken measures internally to try to prevent it from happening. We haven't seen it occur, and so hopefully it was just cabined to this one week. But nevertheless, we've addressed it, and we're hoping that it doesn't occur again. I mean, that's a fair response. And as I said, I was only teasing about language in the opinion. But I think you do get the sense. I mean, we're gonna resolve this case, because that's what we do. But the point is the institutional issue, particularly on that fourth prong and elsewhere, of granting relief in an instance which is purely avoidable. You've got people in the courtroom. I mean, the public expects that people who are in there are gonna do what they're supposed to do, whether that's the governor. Lawyers have been with the case plenty of times. You've got a visiting judge going to help out with a busy array of dockets. We all would want to take confidence that if I miss something, you know, somebody's gonna point it out. So to get reversed, if you will, by the Fifth Circuit, you know, in a case where nobody bothered, you know, to kind of tell me that kind of thing. Anyway, that's just editorial. But you got it, and you know, let the word be so spread. Thank you, sir. Thank you, Chief Judge Stewart. Thank you, Your Honors. All right, Mr. Sokolo, we're not gonna belabor the point of asking you all the other stuff we asked you. But let me just ask you, I mean, just on those cases, as you heard me say, I mean, in trying to look at it in this little grid I have, trying to distinguish Garcia, Vasquez, Diaz, and all of those, I mean, the error is of a similar quality. But it looks to me the defining difference in Villarreal Garcia, you know, is the fact of this, you know, this criminal history, the cycle, et cetera, et cetera. And it looks like some argument can be made, you know, your client, you know, he's amassed seven criminal convictions in a seven-year period, deported three times, et cetera, et cetera. Should that weigh at all in terms of the calculus of defining these cases or be ignored or what? Your Honor, I think Villarreal is distinguishable from this case for the very reason I believe, as I recall the opinion, the judge said a serious or heavy penalty is warranted and that the illegal reentry was serious or very serious. Here the district court knew, same way, knew the client's criminal record and said that he thought there is an important or serious argument for showing compassion. So it's a directly opposite kind of comment, not saying a heavy sentence is warranted, but instead saying that compassion is warranted. So I think it's distinguishable. I would like to address the low end of the guideline, though, did he? Didn't he get a few months above? He got two months more. It's just hard for me to say. I mean, in my view, the standard sentence is low end of the guideline. And so if someone gets above the low end of the guidelines, yet you're saying that the judge thought there was a basis for leniency, it's kind of hard to reconcile that. Well, he got two months above the low end of the revocation guideline. So it's, I mean, if he wants to show compassion, he could have given two months in addition to the 1326. Could have given a Booker variant. I mean, to me, I think almost a third of sentences now are below the guidelines under a Booker variant. So it's hard for me to say this is a compassionate sentence when it's above the low end. But the Sentencing Commission keeps a ton of stats on all kinds of things. Do you know if there's any statistics on how often revocation sentences run consecutive or concurrent with every, you know, these judges knowing they have discretion? I don't know, Your Honor. It's my impression from looking at our border cases that there are a number of judges who do run them concurrent. More, I mean, this is just off the cuff. No, anecdotal. More than probably in Houston. It's just my impression. Well, because my experience in Houston was not that. I mean, if it's run concurrent, it's basically the revocation sentences means nothing practically. Some of them run it partially concurrent, like they'll add four months out of eight months. I would like to address, before my time is up, that this is both a statutory error and a guideline error. It's a statutory error because the judge did not exercise his discretion under 3584. It's a guideline error because under 5G 1.3D and Comment Note 4C, the judge did not understand that he had the discretion to impose a concurrent sentence. So just because the numbers are the same, that doesn't mean it's not a statutory or a guideline error. It's a misapplication of the statute and the guidelines. With regard to the cumulative range, the judge said he had to run it consecutive. So the cumulative range is obviously the revocation range and the 1326 range. I've already pointed out that the judge said he would exercise compassion. And let me end with the final argument that the new guidelines will be higher. I just find it ironic to say, look, if we want to go ahead and violate the Constitution and not give this person his constitutional rights, then we can look at this other sentence and decide, wow, well, this constitutional sentence is lower than the non-constitutional one. So let's not correct the error in the constitutional one because if we were unconstitutional, he could get even more. I find that to be an ironic argument and not one that the court should accept. Let me just share one observation with you. We have two really outstanding advocates representing the defendant and the government here this morning. It strikes me that this is not unlike a complicated tax case argued under IRS regulations, which is where we are in these cases. But also part of the source of the difficulty here is that we have a great deal of expertise that's acquired by the Public Defender's Office, who do a wonderful job, and the United States Attorney's Office. And then so what we take is a judgment call of a judge about a fair sentence and create an extraordinarily complex system. And that's the difficulty. And when we talk about the I practiced under the old system, and I was also a trial judge and sentenced under the old system. This came and guidelines came after I was on this court. So I found that the old system worked pretty well. And the difficulty is that we have to enforce these questions here. It seems to me that in an almost stringent way, the insistence upon first requiring the district court to have all the information before them, which requires that that all three players, the judge and the prosecution defendant, be obligated to get it right. And that's to me that protects the integrity of the court. Yes, Your Honor, and I agree. And with that, I mean, I didn't want the day to go by without telling both of you that we appreciate the depth of your knowledge and your appreciation of skill. You did a very good job, and I appreciate that. Thank you, Your Honors. And with that said, I just ask that you vacate the sentence and remand for resentencing. Thank you for allowing me to be here. Thank you. Both counsel appreciate.